Good morning, your honor. May it please the court, my name is Emily Harrell and I'm here on behalf of Mr. Moreno Pena. The issue today here is whether Mr. Pena's 1989 Texas burglary conviction was a direct result of the murder of his wife, Mrs. Moreno Pena. Mr. Pena's conviction qualifies as either an aggravated felony under the INA statute or a crime of violence under the guidelines. Mr. Pena's position is that even after quarrels, Texas burglary is indivisible and overbroad because A3, a subsection of the Texas burglary statute, does not require a conviction. It does not require that the intent to commit a crime be present at the time of entry. This matter was briefed at a time before DiMaio was decided and before the Fifth Circuit issued its opinion in Herald, its latest opinion in Herald, maybe I should say, in which it held to its earlier position that the Texas burglary statute is indivisible. They did not find it to be overbroad and created a circuit split actually between itself and the Seventh Circuit which says that if you have a subsection like in this instance A3 of the Texas burglary statute where you have an entry and then the commission of a crime, that they sort of pointed to quarrels as saying well that's sort of like a remaining in burglary and so that still qualifies and therefore it does count as a crime of violence. The Seventh Circuit in a case called Van Cannon and as recently supported in their case called Chazen v. Marsk, even after quarrels, has said that if you have a statute like A3 where you enter a building without the requisite intent but then commit the crime, that is sort of like a mens rea plus situation and if the underlying crime that you commit does not have a qualifying mens rea quality that would make it a specific intent crime, then it doesn't qualify. So this circuit as far as I know has not addressed this issue and I certainly would appreciate the opportunity to further brief this matter. I had agreed to a motion earlier filed by the government to stave off a little longer this process so that we could brief some of these issues and I would certainly appreciate the opportunity to address that issue should it become necessary. I think that the statute in question here is not indivisible and we should just go to the casual approach. It seems to me that the Supreme Court's decision in Stitt kind of dooms your argument as to whether or not this statute satisfies the requirements of generic burglary. Why isn't Stitt applicable? Well, Stitt would apply to the issue as I argued it in my initial brief. In other words, because the Texas burglary statute reaches places such as vehicles accommodated for overnight accommodation, that sort of thing, that Stitt would control in that regard. But what I am presenting here and would appreciate the opportunity to present some additional briefing on is that because the Texas burglary statute A3 subsection requires the entry of a building and the commission or attempt to commit a felony or theft, which is what was in place when Mr. Pena violated the statute. It currently has an additional assault, felony theft or assault reporting, but at the time he committed it was just felony or theft. If you, unless you enter with the specific intent to commit a crime, you have neither generic burglary or, under quarrels, the remaining in burglary. You have something that's different. You have an entry without the specific intent and the commission of a crime. Maybe I'm confused, but I thought earlier in this case you had argued in support of your position that this is an indivisible statute. Yes. That the fact that you don't require unanimity for each A1, A2, A3. Correct. That is the basis for that. And it seems to me your argument that you're talking about now, and I appreciate that you had no chance to fully brief it, but it seems to me that's inconsistent with your position that since you don't require unanimity, those are all means as opposed to elements. I'm not presenting my argument very well. I have not abandoned my position that it is indivisible and overbroad because, well, it's indivisible because jury unanimity is not required under Texas law. So that makes the statute indivisible. The next hurdle I have to get over, or Mr. Pena has to get over, is that it's overbroad. In other words, I have to establish that not only is the statute indivisible, but that it's overbroad. Right. And my position is that under A3, it's overbroad because the generic definition of burglary requires a specific intent to commit a crime that accompanies the entry. Okay. That's under Taylor. Under Quarles, they answered the narrow question of remaining in burglary. At what point do you have to come up with the intent to commit a crime when you're remaining in? Is it at that very moment or the broader question of at any time you're remaining in? And under Quarles, the answer is at any time you're remaining in. So just so I understand this, your initial brief, the argument was that it was overbroad because the statute reaches vehicles. Correct. And now Stitt apparently puts a bit of a dagger into that argument. Yes, sir. So which is the case that you now say supports this new argument? There now is a circuit split among the Fifth Circuit, which has just issued its Herald opinion for the, I guess, third time. That was issued the same day this case was set for oral argument. And there is a Seventh Circuit case, Van Cannon, which was decided in 2017 but has recently been, their position in that case has been affirmed in a case called Chazen v. Marsk, 938 F. 3rd, 851, where they say, well, you have a burglary statute like this where it's entry and then commission of the crime. You can look at the mens rea, which accompanies the crime that was committed, in determining whether it reaches that specific intent requirement for a generic burglary. And under Texas law and under the law that the Seventh Circuit, I believe it was a Minnesota statute that the Seventh Circuit was looking at, you can have this entry plus commission of this other offense, in this case felony or theft, with a mens rea of less than intention. There are cases under Texas law where a person can enter and commit an assault. Well, assault under Texas law can be committed knowingly, intentionally, or recklessly. And that's where we hang our hat, is that there are statutes under Texas law which can be committed with a mens rea of recklessness, which is less than the specific intent required for something to be generic burglary. So it sounds like the statute hadn't changed in recent years. It was there. That argument was there to be made sooner. No? What is it that has made this a new argument that requires new briefing? It doesn't. It makes it a new argument that requires new briefing. Just because you just figured it out. The Spitt case did put a dagger in my argument about the vehicular location being overbroad. And because the Quarles case spoke to the narrow question of remaining in, I mean, I will readily admit that I did not raise this argument to begin with. But I think that because of the change in the law, whether it be under Stitt, Quarles, the Fifth Circuit has now created a circuit split between itself and the Seventh and Eighth Circuit, that I would certainly request additional briefing time on this issue. Okay. Can you move on to the guidelines issue? Sure. Because I think we're interested in that. Mr. Moreno-Pena originally got a pre-sentence report where the calculations were done under the 2015 guideline manual. And the 2015 guideline manual determined that his prior conviction counted as a, I guess it was additional felony under 2L1.2B1D. So he only got four additional levels from the base offense level of eight. At some point, the district court ordered an additional preparation of the pre-sentence report and the calculations were done under the 2016 manual. And that increased his exposure to a guideline range that was greater than he would have experienced under the 2015 manual. And so the argument, my argument is, is that the use of the 2016 manual was a violation under Pew and he should have been sentenced under the 2015 manual, assuming these arguments that it doesn't qualify as a crime of violence nor as an aggravated felony. So therefore, it would fall under 2L1.1B1D and he would only be exposed to an initial four levels. So I get, I think I understand how in the change from 15 to 16, there's a change in the guidelines that relates to the aggregated felony or a felony in some sort from the four points to the ten points, I think. Correct. I understand, obviously, four is less than ten, so I'm not real good with math. Me neither. But to the point that you alluded to, and I think I'll wait to hear from the government on this, but they argue that the 2015 guidelines could have been, I think, more punitive. And I hesitate to ask you to speak for them, but I think they're going to say, or maybe they're going to say the crime of violence would have allowed for 12 points, which would have been more than the ten points that was used under the 2016 guidelines. Assuming that's their position, what's your response to that? Well, my response is that I can still defeat that argument by showing that this Texas burglary conviction is neither a crime of violence nor an aggravated felony based on the arguments I've raised, which, of course, Judge Diaz correctly pointed out, I didn't initially raise regarding the subsection of A3. Sure. But if I can win those points, then the 2015 manual is definitely more favorable to my clients. So your point is crime of violence is not really available. That's correct. Because it's overbroad based on it being limited to a dwelling. That's correct. Let me ask you this kind of theoretical question. If there was another basis in 2015 that was not utilized either in the PSR, I mean, is the fact that there was another potential avenue to make the 2015 more punitive that was never utilized, is that even something we can consider? Is that making sense to you? I'm not sure I understand your question. As I understand their argument is, well, 2015 could have been more punitive because we could have used crime of violence. And I may be getting it wrong, so I hate to attribute someone else's argument. But assuming that's the case, can we consider points that were available to be considered but weren't considered as a basis for making it more punitive? So my time is up. No, go ahead. The answer is no. Because if they didn't raise it, then you can't ‑‑ if wishes were horses, beggars would ride. And if they didn't raise it at that point, or it just doesn't seem like something that ‑‑ We could use that same definition to ‑‑ Yes, sir. I certainly understand that. Well, let me ask you this. This may be related to Judge Quattlebaum's question, but if I ‑‑ as I understand it, the Texas statute criminalizes burglary of both habitations and buildings. Correct. All right. And it defines a building as any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use. That seems to sweep beyond that generic definition of dwelling, which would seem to suggest that the 2015 guideline might be less punitive because it sweeps more broadly than that of a generic dwelling, which a dwelling being defined as something used for habitation. So, again, it doesn't appear that that argument was raised here, but you may be hearing it for the first time. What about that? I may have ‑‑ I thought that I had articulated that in my brief, and perhaps I did not. But that certainly was my intention to say, I know there's at least one footnote where I mentioned the Bonilla case, is that unless it is of a dwelling, you know, it is overbroad. And I do believe that that definition of building takes it beyond that particular definition of crime and violence in the guidelines. Perhaps I didn't articulate it as well as I thought I had. Okay. Thank you very much. Thank you. Mr. Austin. Morning. Morning. Your Honor, excuse me, Matt Austin for the government. As we discussed today, landscape has changed significantly here, and it's flipped the number of arguments we set forth in our brief. But ultimately, we reached the same conclusion. The government believes that you should reach the same conclusion, that Texas burglary is a generic burglary and qualifies as an aggravated felony under 8 U.S.C. 1101. And ultimately, we believe that through these cases that have come out recently, Stitt, Quarles, and now Herold, the government's position has been significantly strengthened. And this comes in the case of Herold after two remands, instruction of the Supreme Court to reconsider their previous holdings. And ultimately, this brought them in line with the circuit precedent of this circuit in the United States v. Bonilla, where this Court already held that the Texas burglary statute constitutes a generic burglary. And we see nothing in the record or anything else suggesting that there's any reason to go and rule against Bonilla. For that reason, we would ask that the Court affirm the sentence imposed by the District Court. So, Guy, and I appreciate there has been changes, so I just want to make sure I understand where y'all are in respect to that. Is the focus of your argument, it sounds like you generally concede that the crime of violence would not be a basis based on demaia. Correct. And then the two remaining avenues would be either theft or burglary. Do you concede theft would not be a match because of the taking issue? Your Honor, we stand by our brief, but ultimately we don't think the Court even needs to get to that issue because it qualifies as a generic burglary. Okay. And under the burglary issue, and this may be unfair, but we just heard an argument about how A3, the fact that it does not require specific intent but could be committed with recklessness, makes that overbroad compared to the generic burglary statute. I don't know if you've had time to be prepared to talk about that issue, and I know that's a challenge, but do you have a response at this point? I guess the level of preparation depends on how much you like my answer. But we would say that under the guidelines or that the void for vagueness challenge wouldn't apply to that section of the guidelines under 121.2B1A. Maybe I don't think I asked it right. I think I'm going back to the argument, or maybe I'm not understanding your answer particularly. What I was asking about was defense counsel's argument that, I think you're talking about whether, maybe I'm wrong, were you talking about the definition of crime of violence under the guidelines? Yes, Your Honor. I asked a bad question then. I led you down the wrong road. I'm sorry. But what I was asking about was the argument that defense counsel made, and she conceded she wanted to brief it more, and it was new. So you may not have been prepared to address this, but she was saying, before you get to the guidelines issue, that the Texas statute is broader under burglary than generic burglary because you violated committing A3 without the intent. You could commit it recklessly. Do you have a response to that position? Under Quarles, we believe that would not be overboard. You think Quarles covers that issue? Yes, sir, Your Honor. We can think of a lot of different situations where the violent encounters Congress was seeking to avoid or prevent or punish people for could result from just the type of situation we're talking about here, where somebody's lawfully in a home, say they're at a party, and they decide they want to commit some crime of opportunity, whatever it may be, while they're in there. There's the same risk that there's going to be a violent encounter if somebody walks in and encounters them during the process. If you think of somebody stealing something and the homeowner walks in, the person may have been invited into the home and had no intent, but they see something that they want. That's just as dangerous as somebody breaking in in the middle of the night, depending on the particular circumstances there. And so that would be our response with regard to the Quarles piece of it. And so, unless the Court has any more questions about that section of the Ordinance, I'm going to turn to the guidelines here, because we think the Court's decision with regard to it being an aggravated felony also controls the harmless error analysis. And we'll concede that the 2015 guidelines should have been applied at the time. The 2016 guidelines had not come into effect yet. The sentencing took place in October 2016, and the guidelines did not take effect until November 2016. And so we acknowledge that. We got that wrong in our brief. But based on an aggravated felony analysis, we think that the defense would also likely prefer the 2016 guidelines, based on the issue of Section 2L1.2B1A. If you could explain that, please. How was it harmless to apply 2015? Our view is that it would be harmless to apply 2016 guidelines. Right. I'm sorry. Why is that? So, in this, bear with me for a second because it gets into the weeds a little bit. But if the Court finds it's an aggravated felony and applies the 2015 guidelines, start off at a base offense level of 8. As the guidelines were initially calculated, the probation officer included enhancement of four levels for the defendant's previous conviction just for a felony, which I believe he concedes he has a felony conviction. However, if it were an aggravated felony, that would rise to 12 points. And with the other adjustments in acceptance of responsibility that were included in that PSR, that would come to a total offense level of 22. So if you could stop there, and I'm not as good with the guidelines. Judge Cosburn probably knows these as well as anyone up here. But are you saying there was an avenue under the 15 guidelines to use 12 points for an aggravated felony? Yes, Your Honor. What's the guideline citation for that? 2L1.2B1A. And it's actually, it could be either 12 levels or 16 levels based on the application of Chapter 4 to that previous conviction. And that's separate from the crime of violence issue? That is the crime of violence issue. Okay, so you're saying, okay, your argument is based on the fact that you could have used the crime of violence provision in the guidelines. Yes, sir. So that, I have two questions related to that. The first is, I asked your opposing counsel whether we're able to consider a provision that was not utilized for the first time on appeal. It was based on the battery, I think, or the four-point provision. Can you take advantage of a provision in the guidelines that would have made it more punitive that was not considered or advocated for by you below? I don't think that we would, ultimately. I'm not sure if we actually could. But our position is that the 24-month sentence was reasonable under either statutory framework. And so Judge Duffy said during the sentencing that he would have issued or given the same sentence regardless. He was focused, I think, more on the statute than the guidelines. I think he also made reference to the fact that he was going to be hewing very closely to the guidelines. So that raises the question of which guidelines. Well, respectfully disagree just a little bit about what he said during the sentencing. Because if you look at the transcript of what he said. Well, I mean, here's what he said. Sure. And I'm going to follow the guidelines as read into the record. I'm going to sentence you to the lower end of the guidelines range, which is 24 months. Ordinarily, I'd give you 30 months. But for the reasons that he argued for downward departure, I'm saving you at least six months. That's a J63. So it seems clear that he was focused on the guidelines. And so I think it's pretty important that we figure out which guidelines. Yes, sir. Well, he also said, I was going to point this section out, J48-49. He referenced the statutory penalty, like Ronard mentioned, but also given the guideline ranges that he's in. And so to us, that indicates he was taking into account that there are different guidelines that could apply under either one. He was going to reach the same conclusion. You mean 2015 or 2016? Correct, Your Honor. Because that was a direct issue that was raised during the sentencing hearing. Yeah. Not 100% sure what he's saying. When he said I would end up giving the same sentence under either of the statutory schemes, which was cited, it kind of looks to me like that's talking about the statutory schemes of 1326B1 or B2. Yes, sir. And then he says, let's go to the guidelines, suggesting now he's going to the guidelines. So his comment, as I read it, that the sentence would have been the same, was more a reference to B1 versus B2. Sure. Which makes sense because one's the max of 10 years, one's the max of 20 years. And even though they're the high end of the 16s, we're way under both of those. Right. But I don't know that that answers the question of whether 2015 or 2016 would have applied. Right. Your Honor, I think maybe I wasn't clear. Our view is that he was referencing both issues because both issues had been raised during the sentencing hearing. And they're not mutually exclusive in our view. Our view is that he was trying to account for the fact that there was this dispute and issue a sentence that he thought was reasonable regardless of whatever guidance the statute or the guidelines gave. But to agree with that, we'd have to agree that whereas he was willing to go, he decided to go with the absolute bottom range of the guidelines using 2016. Instead of going at the bottom of the guidelines under 2015, he would not just go to the top but upward theory. That's a pretty significant change in approach. And, yeah, I'm just curious as to how you would respond to that type of difference between the two. Sure. There is a gap for sure. We're not disputing that at all. There's a significant gap between the two sets of guidelines there if the aggravated felony question is in the mix. But during the sentencing, he went through the 3553 factors, excuse me, and first weighed some of the more mitigating aspects of the defendant's life. Then he also went into some of the more troubling aspects with his criminal record and things like that and addressed his concerns about what this defendant had done in his past and the different policy concerns this implicates just by virtue of issues with people crossing the border back and forth. And our view is that he ultimately settled on this sentence. We can't go beyond what he told us in the sentencing hearing. But he did say, I'm not sure if he said it specifically, but it appears he was trying to reach a reasonable result under either situation and taking into account the fact that the law was in flux so much at that point. Thank you. Did you hear the question that I asked Ms. Harrell at the end about whether or not generic burglary is overbrought under the 2015 version of the guidelines because it is defined as including commercial buildings and not just a dwelling? I know we're springing a lot on you all, but why isn't that suggestive of the fact that the 2015 guidelines might have been more beneficial to him? So if it's possible to brief this additionally, I'm more than happy to. My understanding is that that portion of the guidelines would not be subject to the same void for vagueness issues and the same challenges. And so whether it's more broad is not necessarily a critical factor in that determination. He pled to burglary of a habitation with intent to commit theft. That falls squarely within burglary of a dwelling in our view. I think I understand the argument that the DeMaia decision does not necessarily apply to the guidelines and makes them void for vagueness. But don't we still have to consider whether it's overbought? I'm not so sure that the court does. And I don't know. I rely on the fact that I haven't had a chance to run this down so much. Fair enough. If that's a lifeline I can use now. I don't want to phone a friend. And so that's essentially it, Your Honor. Unless the court has any other questions, we think it's not even necessary to get to the theft defense analysis or the divisibility analysis. And the court has plenty to rule on as it is in the affirmative sentence. All right. Thank you. Thank you, Mr. Ross. I just have a few points to make in response to Mr. Austin's argument. The first is that the Quarles decision actually is very narrow. Okay. So Quarles was deciding whether remaining in burglary, it didn't matter when you formed your specific intent. And if we were to apply Quarles and say that Texas burglary is indivisible but that Quarles answers the question of whether A-3 is a qualifying offense, that would subsume A-3 into A-2 of the burglary statute. It would turn the A-3 subdivision into A-2 because it would turn it into a remaining in burglary. And that's not what it is. It's an entry without consent and then a commission of a crime. So it's not the remaining in subsection. And if you apply Quarles to find that, you know, this individual statute, that A-3 is subsumed up into A-2. So I would argue that Quarles does not answer this question. The second point, Mr. Austin argued about Bonilla having already decided this issue. The problem with Bonilla is that Bonilla was pre-DeChamps. And so it assumed that Texas burglary or that this burglary statute was divisible, which the defendant conceded. And so there's no briefing on that as to this matter. And so I would argue that Bonilla should not control here, as I argued in my brief, because it was decided before DeChamps and Mathis. Judge Duffy was bound to, as part of the procedural reasonableness of his sentence, to properly calculate the guidelines. It doesn't really matter. Let me back up. It does matter that his sentence was reasonable. But under a procedural reasonable analysis, what matters is did he properly calculate the guidelines. And that's why this is important. You know, the government can argue all day long that perhaps this is harmless error. But under Bolina-Martinez, the defendant has a right to have his guidelines properly calculated. And so that's why this is important. Yes, Texas burglary does not meet the definition of burglary of a dwelling under the guidelines. Again, I have to get over the hurdle of whether it meets the definition of aggravated felony, because that would, under B1C, he would have gotten eight levels. Well, eight levels is less than the ten levels he got under the 2016 manual. So even if I lose, potentially, there, it would have been more beneficial to apply the 2015 manual, which the government concedes should have been done. And the other thing I would say was that it is important to Mr. Pena to determine whether Texas burglary counts as an aggravated felony in this instance, because he was penalized under 1326B2. And if that remains on his record, that precludes him from ever being readmitted to the United States. I mean, it has a host of collateral consequences, which a conviction under B1, which is the 10-year penalty, does not have. And so that's the statutory reason that this is important to Mr. Pena. So I would, Mr. Pena would request that the district court's judgment be vacated and this remanded for resentencing. Thank you. Thank you. Ms. Harrell. You want to take a break? I'm fine, but whatever. You want to take a break? I'm fine, but whatever. We'll continue. All right. The court will come down and greet counsel with respect to this issue about supplemental briefing. The panel will take that under advisement and decide whether or not we think it's necessary. All right.
judges: Albert Diaz, A. Marvin Quattlebaum Jr., Max O. Cogburn Jr.